## BENJAMIN D. BROWN *vs*. BRADFORD SCOTT.

FRANKLIN,
January,
1835.

A son, purchasing a farm, with a view to furnishing a home to an indigent father, and stock-
ing said farm, and permitting the father there to reside and labor, does not subject the
products of that farm to attachment on the father's debts.

This was an action of trespass, *vi et armis*, to recover the value of five tons of hay.

It appeared in evidence, on the trial of this cause, that sometime previous to April, 1830, one William Brown, father of the present plaintiff, resided on a farm in the town of Swanton, which farm was rented to the said William Brown by one S. S. Keyes;— that the plaintiff, on the 16th day of April, 1830, purchased said farm of Keyes, for the purpose of providing a home for his father and his father's family; and also purchased stock and farming utensils, suitable for carrying on said farm. William Brown, the father, remained on said farm and carried the same on. It was also proved, that William Brown was poor and destitute. It further appeared in evidence, that on the eighteenth day of December, 1832, the defendant went to said farm and sold a mow of hay at public auction, which hay was cut upon said farm, and put into the barn by William Brown. Said hay was not moved by the officer, or the person who bid it off, but was paid for and afterwards used by said William Brown. It was bid off by a brother of the plaintiff, and to prevent the removal. It also appeared, that the plaintiff never resided on said farm, but that Keyes, previous to the purchase, permitted William Brown to occupy at the request of the plaintiff.

Upon this testimony, the counsel for the defendant requested that a non-suit be directed, as the evidence would not support the present action; which request was refused by the court.

The defendant then gave in evidence, that he was a legal constable of the town of Swanton, and that said hay was levied upon by virtue of an execution to him directed, which execution was issued on a judgment rendered by one Alfred Forbes, justice of the peace in and for said county, in favor of one Zoraster Fisk, against said William Brown, for the sum of fifty-one dollars and fifty-two cents damages, and two dollars and eighty-one cents costs, &c., which, after being advertised according to law, was sold at auction as aforesaid. The defendant further proved, that the said Benjamin D. Brown had stated, that if William Brown could raise any thing more than sufficient to support himself and family, he, Benjamin, was willing it should go to pay William's debts.

8

FRANKLIN,
January,
1835.
Brown
vs.
Scott.

The defendant then offered to prove, that said William had sold hay, stock and grain from said farm, raised thereon since the aforesaid purchase by said Benjamin, and had also purchased a horse and other stock, for which his son gave his note, and put on said farm; all which was excluded by the court, and a verdict directed to be taken for the plaintiff for the amount paid the officer upon the purchase:—to which the defendant excepted, and the cause passed to this court for revision.

*Stevens and Foster for the defendant.*—1. In this case the defendant contends, that the county court erred in deciding, that the testimony introduced by the plaintiff was sufficient to support an action of trespass, *vi et armis*, because the testimony did not even tend to prove that the defendant had done any act which was in itself immediately injurious to the property of the plaintiff. Without such proof, no action of trespass, *vi et armis*, can be supported. 1 Chit. Plead. 122–8.

2. The sale in this case by the defendant could not operate as an immediate or direct injury to the plaintiff, because it is in proof that the hay was not removed or meddled with by the defendant; and in order to test the question, whether trespass, *vi et armis*, will lie, it is only necessary to examine whether the plaintiff, supposing him to be the owner of the hay had suffered any injury at the time the act complained of was completed. We contend that he had not, for the hay, if ever in his possession, still remained so, uninjured. The act of the defendant, as proved by the plaintiff's witnesses, amounted merely to a slander of the plaintiff's title to a personal chattel.

3. From the evidence introduced by the plaintiff, it did not appear that the defendant was an officer, having right or authority to sell at vendue, as such; his acts must therefore be taken as the acts of a private individual, who could convey by sale no better title than he himself had. Therefore, if he was guilty of a fraud, the purchaser alone could call on him for damages. We allow, that if the property had been removed, the owner might have supported trespass against him who removed it, and against the person who sold and directed it to be removed.

4. It is contended by the defendant's counsel, that, admitting the defendant to be a legal officer, and that he had a process which authorized him to sell the goods and chattels of William Brown, yet, if he levied upon, advertised and sold the goods and chattels of another person, he by such act conveyed no title to the pur-

FRANKLIN,
January,
1835.
Brown
vs.
Scott.

chaser.—7 C. L. R. 272, *Farrant* vs. *Thompson.* 3 John. 174, *Wilson and Gibbs* vs. *Ex. Rend.* 2 John. 48, *St. John* vs. *Standridge.* 6 John. 44, —— vs. *Livingston.*

If the defendant never injured or removed the property, nor conveyed any title to the purchaser by the pretended sale, he certainly cannot be liable to this action.

5. The defendant further contends, that the property sold, to wit, the hay, was liable to be attached and sold as the property of William Brown, on executions against him ; for he must be considered as tenant at will, or a tenant for years; and in either case, whatever he raised was subject to attachment. William Brown cannot be taken and deemed to be the agent of the plaintiff, for the agent must in all cases be accountable to the principal, and from the testimony adduced, this in the present instance was not the case. William Brown was put into the possession of the farm and stock, and directed to support himself and family out of it, and if any thing more, could be made to apply the balance to the payment of his debts.

Who shall be considered landlord, is a consequence to be deduced from the act of the parties.—12 Petd. Ab. 12, 13. A person occupying land by the permission of the owner, or a gift of the use of lands, constitutes the relation of landlord and tenant.—12 Petersd. 17, note.

A disseizor acquires a good title to the crops raised by him upon the land of which he dispossessed the owner, and a tenant at will is entitled to the emblements.—2 B. C. 145, 403. 8 T. R. 3.

*Hunt and Beardsley for the plaintiff.*—Two questions are presented by the exceptions for consideration.

1. Are the facts stated in this case sufficient, *prima facie*, to entitle the plaintiff to a verdict ?

2. Was the testimony offered by the defendant properly excluded by the court ?

The determination of the first point depends mainly whether the property in question was the property of the plaintiff, or of William Brown ; or whether, granting that in point of fact it was the property of the plaintiff, it was so situated that it might be taken to satisfy William Brown's debts.

It appears by the case, that previous to the purchase of the farm by the plaintiff, William Brown was permitted to occupy the farm, at the request and upon the responsibility of the plaintiff solely. The plaintiff, and not William Brown, was liable for the

FRANKLIN,
January,
1835.

Brown
vs.
Scott,

rents. At the time of the purchase, it was agreed, that William Brown should remain upon the farm, have a home there, and his support out of the proceeds of the farm. This certainly could not vest in William Brown such a legal interest in the crops, though produced by his labor, as to render them liable to attachment for his debts. William Brown was to have only his support. That could not be attached, for it was exempt by statute. The overplus, if any, could not be taken to satisfy William's debts, for he had no legal interest in it. The relation in which he stood to plaintiff was rather that of agent than tenant. The public could not be deceived, because before and at the time he was known to be in destitute circumstances.

2. If the principles above assumed be correct, it necessarily follows, that the court properly excluded the evidence offered by the defendant to show that William Brown sold hay, grain, &c. from the farm; for whatever was necessary to be disposed of in order to the support of William Brown and his family, he had a right to dispose of; and the disposition and sale would furnish no evidence that he has any other or greater interest than has been already considered.

The opinion of the court was delivered by

COLLAMER, J.—The first question raised in this case is, was the property so taken as to amount to a trespass? It appears, that the defendant, as an officer, sold the hay on execution. This is within the case, *Hart* vs. *Hyde*, 5 Vt. Rep. 328, and must follow that decision.

The principal question, however, is, was this hay the property of the plaintiff, or his father? It seems that the plaintiff purchased a farm to furnish a home for an indigent father, and put on tools, stock, &c. and suffered the father there to labor and live. It is now insisted, that the father was a *tenant* to the son, and so became the owner of all the crops on the place, and that the same were subject to be taken on the father's debts. The court will be slow to give to a *bona fide* support, furnished by a son to a father, such artificial names and technical character as shall in effect discourage and frustrate such praiseworthy objects. To create a *tenancy*, there must be some parting with the possession, so as to give *exclusive* occupancy to the tenant, at least for the time being. Nothing of this kind was shown in this case. The father was suffered to reside there. Now to hold this a *tenancy*, and make the crops there the property of the father, would be forcing upon the

FRANKLIN,
January,
1835.

Brown
vs.
Scott.

affair a character never designed by the parties, and evidently at war with their legitimate design. The true object is obvious, and the legal character should be holden by the courts to correspond; that is, the plaintiff is the owner of the farm, stock, tools and crops, and has never parted with possession. He is by his father in constructive possession, with the right of taking personal and actual possession at any time. This entitles him to maintain trespass. It appears the plaintiff had said, if more could be raised than was necessary for the father's support, he was willing it should go on his debts. This did not vest the title in the father, or subject it to attachment as his. It does not appear that even enough for the support was raised.

Nor do the facts offered by the defendant seem to alter the case, had the proof been admitted. He offered to show the father had sold off the crops and had purchased stock on to the farm, for which the son gave his note. This only tended to prove him the agent of the plaintiff, not owner of the property; and had it been shown that the father had purchased the horse and given his own note, it would but have made him the owner of that horse, not of the hay. Much stress is laid by the defendant's counsel on the law of emblements. That only arises where a *tenancy* is shown, and there does not extend to grass.

This case is not to be drawn in precedent to give protection to *fraudulent* transactions. Had any testimony been offered, tending to prove the purchase money had in whole or in part belonged to the father, or that he had been for a long time in exclusive possession, and by valuable labor added greatly to the farm and stock, and was secreting his property from his creditors, by his son's assistance, it would have deserved a different consideration and course of proceeding; but the case is destitute of all circumstances of that character.

Judgment affirmed.